[Cite as *State v. Leet*, 2020-Ohio-1404.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case Nos. 28340 and 28341 |
| | : | |
| v. | : | Trial Court Case Nos. 2018-CR-1933/1 and 2018-CR-2306/2 |
| | : | |
| JOSHUA LEET | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of April, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant, Joshua Leet, appeals from his convictions in Montgomery C.P. Nos. 2018-CR-1933/1 and 2018-CR-2306/2. In the former, Leet's case was tried to the bench, and the trial court found him guilty of one count of aggravated possession of methamphetamine, a second degree felony pursuant to R.C. 2925.11(A) and (C)(1)(c). In the latter, Leet entered a plea of no contest to one count of aggravated possession of methamphetamine, a third degree felony pursuant to R.C. 2925.11(A) and (C)(1)(b); one count of having a weapon while under disability, a third degree felony pursuant to R.C. 2923.13(A)(3) and (B); one count of carrying a concealed weapon, a fourth degree felony pursuant to R.C. 2923.12(A)(2) and (F)(1); and one count of illegal possession of drug paraphernalia, a fourth degree misdemeanor pursuant to R.C. 2925.14(C)(1) and (F)(1).

{¶ 2} Raising three assignments of error, Leet argues that the State did not introduce quantitatively or qualitatively adequate evidence to prove his guilt in Case No. 2018-CR-1933/1, and that the trial court erred in Case No. 2018-CR-2306/2 by overruling his motion to suppress the evidence against him, which the State obtained as the result of a purportedly unlawful seizure and search of his person. We hold that the State introduced adequate evidence to prove Leet's guilt in Case No. 2018-CR-1933/1, and with respect to Case No. 2018-CR-2306/2, we hold that the trial court did not err by overruling Leet's motion to suppress, because the underlying seizure and search were constitutionally permissible. Therefore, Leet's convictions are affirmed.

### I. Facts and Procedural History

{¶ 3} On October 16, 2017, two officers with the Dayton Police Department saw Leet walking with an unleashed dog into the alley behind his residence, which at the time

was a house on Wyoming Street.   *See* Trial Transcript 51:18-51:22, 53:1-53:8 and 55:10-55:14; *see also* Revised Code of General Ordinances of the City of Dayton, Ohio § 91.50 (concerning "[c]ontrol of dogs").   Catching sight of the officers, Leet reversed course and walked back towards his residence, prompting the officers to approach him and instruct him to stop.   *See id.* at 55:10-55:17.   Instead, Leet refused to comply and entered his residence.   *See id.* at 56:17-57:5.

{¶ 4} A third officer arrived, and after being apprised of a warrant for Leet's arrest, the three officers prepared to force their way into the house.   *See id.* at 58:2-58:22.   Leet finally emerged at that point, and the officers arrested him.   *Id.* at 58:25-59:2.   During a search of his person incident to the arrest, the officers found a bag containing 2.44 grams of methamphetamine.   *See id.* at 30:4-30:7 and 59:3-59:7.

{¶ 5} With the owner's consent, the officers searched the house, as well.   *See id.* at 134:25-135:8.   In a first-floor bedroom identified as Leet's, the officers found a bag containing 17.19 grams of methamphetamine and a bag of gelatin capsules.   *See id.* at 29:18-30:1 and 71:4-72:15.   The officers also noticed a safe, which they confiscated.   *Id.* at 71:18-72:3.   After obtaining a search warrant for the safe, a detective found that it contained, among other things, three digital scales, several bags of marijuana, and a bag of "assorted jewelry."   *Id.* at 140:7-142:8.   The methamphetamine discovered on Leet's person and in his bedroom eventually led to the indictment in Case No. 2018-CR-1933/1.

{¶ 6} On June 12, 2018, two officers in a marked police cruiser were patrolling on North Wright Avenue, a high crime area.   Motion, Plea & Sentencing Transcript 9:5-10:13.   As they passed a particular house on North Wright Avenue, about which the Dayton Police Department had received a number of drug-related complaints, the officers

saw a car in the driveway. *Id.* at 10:16-10:23. Upon checking its license plates, the officers were informed that the car had been reported stolen; the suspect named in the report was Charles Steinmetz. *See id.* at 10:16-10:23 and 11:14-11:16. The officers parked their cruiser a short distance away, hid themselves behind another house, and watched the car. *Id.* at 11:2-11:7.

{¶ 7} Leet—whom the officers had not yet identified—and another man walked out of the house on North Wright Avenue, headed towards the car, a few minutes later.[1] *Id.* at 11:8-11:13 and 11:21-12:2. Based on a photograph, the officers were able to identify Leet's companion as Steinmetz. *Id.* at 11:14-11:16. Concerned that the men would flee if they were able to reach the car, the officers ordered them to the ground at gunpoint. *Id.* at 12:3-12:11. Steinmetz complied. *Id.* at 12:9-12:12. Leet, however, bounded into the street towards another car, which was parked on the street in front of the house; dove into the car through its open, driver's side window; and landed in the passenger's seat. *See id.* at 12:9-12:17 and 21:10-21:20.

{¶ 8} As Leet dove into the car, one of the officers discharged his taser, striking Leet with one of the device's electrodes, though apparently with little effect. *Id.* at 12:18-12:24. Leet attempted to start the car, and the officer "change[d] out [the] cartridge on the taser to tase [Leet] again." *See id.* At that point, the officer saw Leet "pulling a handgun out of his left pocket," so the officer discharged his taser. *Id.* at 12:23-13:2. The taser temporarily immobilized Leet, allowing the officers to arrest him and secure his

---

[1] One of the two officers, Sergeant Randy Beane, had assisted with the arrest of Leet on October 16, 2017. Trial Transcript 68:10-69:16; Motion, Plea & Sentencing Transcript 8:11-9:19.

weapon.   *See id.* at 13:1-14:14.   A search of his person incident to the arrest yielded a bag of methamphetamine, and the officers found a second bag of methamphetamine in the car, in front of the passenger's seat on the floorboard.   *See id.* at 23:4-23:14.   These events led to the indictment in Case No. 2018-CR-2306/2.

{¶ 9} A Montgomery County grand jury issued an indictment against Leet in Case No. 2018-CR-1933/1 on June 21, 2018, charging him with a single count of aggravated possession of methamphetamine, in violation of R.C. 2925.11(A).   On January 17, 2019, Leet waived his right to a trial by jury in favor of a bench trial, which began on January 22, 2019, and ended on January 23, 2019.

{¶ 10} In Case No. 2018-CR-2306/2, the grand jury issued an indictment against Leet, Steinmetz and a third man on June 22, 2018.   The following four counts of the indictment were directed to Leet: Count 2, aggravated possession of methamphetamine in violation of R.C. 2925.11(A); Count 3, having a weapon while under disability in violation of R.C. 2923.13(A)(3); Count 4, carrying a concealed weapon in violation of R.C. 2923.12(A)(2); and Count 7, illegal possession of drug paraphernalia in violation of R.C. 2925.14(C)(1).   Leet filed a motion to suppress on July 17, 2018, and the trial court overruled the motion in a decision entered on February 12, 2019.

{¶ 11} Leet appeared before the court for proceedings in both of the cases on February 15, 2019.   The court informed Leet that it found him guilty as charged in Case No. 2018-CR-1933/1, and Leet then entered a plea of no contest to the charges against him in Case No. 2018-CR-2306/2.   On March 11, 2019, the court convened a consolidated sentencing hearing.   It sentenced Leet to serve six years in prison in Case No. 2018-CR-1933/1, and in Case No. 2018-CR-2306/2, it sentenced Leet to serve terms

of 36 months on Count 2; 36 months on Count 3;18 months on Count 4, and 30 days on Count 7. The court ordered that all of the terms in both of the cases were to be served concurrently, for an aggregate sentence of six years.

{¶ 12} On March 12, 2019, the trial court filed judgment entries of conviction, and Leet timely filed notices of appeal on March 12, 2019. After we granted a series of extensions of time at Leet's request and at the State's request, briefing was completed on February 6, 2020.

## II. Analysis

{¶ 13} For his first assignment of error, Leet contends that:

IN CASE CA 28340/2018 CR 02360/2 [sic], THE TRIAL COURT ERRED WHEN IT OVERRULED JOSHUA LEET'S MOTION TO SUPPRESS.

{¶ 14} Appellate review of a trial court's ruling on "a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Because the trial court is "in the best position" to weigh evidence in general, and to evaluate the credibility of witnesses' testimony in particular, an "appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." (Citation omitted.) *See id.* Accepting the trial court's findings of fact as true, "the appellate court must then independently determine," without deference to the trial court's ultimate holding, "whether the facts satisfy the applicable * * * standard." (Citation omitted.) *See id.* The trial court's legal conclusions are reviewed de novo. *In re D.S.*, 2013-Ohio-5740, 5 N.E.3d 1063, ¶ 2 (8th Dist.).

{¶ 15} Leet argues that because the evidence against him in Case No. 2018 CR 02360/2 was obtained through a search incident to an illegal arrest, the trial court erred

by overruling his motion to suppress.   *See* Appellant's Brief 5.   Acknowledging that he encountered officers with the Dayton Police Department on June 12, 2018, while "walk[ing] toward a stolen car" after "exit[ing] a suspected drug house," Leet maintains that the officers "had no evidence that [he] [had been] involved in [the theft of] the vehicle," and he adds that, at the time, he "was not * * * suspect[ed] [of having engaged in] any criminal activity."   *Id.*   Thus, by "[o]rdering [him] to the ground at gunpoint," Leet concludes that the officers "converted what would have been a [permissible] *Terry* detention * * * into a[n] [impermissible,] formal arrest without probable cause."   *Id.*

{¶ 16} The Fourth Amendment to the United States Constitution and Article 1, Section 14, Ohio Constitution prohibit unreasonable searches and seizures.   *Terry v. Ohio*, 392 U.S. 1, 8, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *see also State v. Taylor*, 138 Ohio App.3d 139, 145, 740 N.E.2d 704 (2d Dist.2000).   Warrantless searches and seizures violate this prohibition unless conducted pursuant to one of the "few specifically established and well-delineated exceptions."   (Citations omitted.)   *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).   One of these exceptions "is commonly known as an investigative or *Terry* stop."   (Citation omitted.)   *State v. Dorsey*, 10th Dist. Franklin No. 04AP-737, 2005-Ohio-2334, ¶ 17.

{¶ 17} In "*Terry* [*v. Ohio*], the United States Supreme Court held that a police officer may detain" a person "for brief questioning where the officer has a reasonable suspicion that the [person] is engaged in criminal activity."   (Citation omitted.)   *State v. Shepherd*, 122 Ohio App.3d 358, 364, 701 N.E.2d 778 (2d Dist.1997).   Reasonable suspicion "is 'vaguely defined as something more than an inchoate or unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause.' "

*Id.*, quoting *State v. Osborne*, 2d Dist. Montgomery No. 15151, 1995 WL 737913, *4 (Dec. 13, 1995). The "usual requirements of a warrant and probable cause are not implicated by [a *Terry* stop] because an investigatory detention is less intrusive than a formal custodial arrest." *Id.*

{¶ 18} Here, the officers ordered Leet to the ground because he was "leaving [a] known drug house [in the company of] the suspect" identified in the stolen car report they were investigating, and they believed as a result that Leet might have had "information about the stolen car" or that he might "possibly [have] bought drugs [while he was inside] the house." Motion, Plea & Sentencing Transcript 16:4-17:6. The trial court held that the officers did not violate Leet's Fourth Amendment rights by ordering him to the ground because they "had a reasonable, articulable suspicion that criminal activity [might] be afoot"; because they were in "a high crime area"; because "numerous complaints had been made about [that address on North Wright Avenue] being a 'drug house' "; and because the "vehicle parked in the driveway of this house had been reported stolen." Decision, Order and Entry Overruling Motion to Suppress 5, Feb. 12, 2019. Having determined that the officers were initially entitled to stop Leet, the court held further that Leet's subsequent arrest was lawful, and it therefore overruled Leet's motion to suppress the evidence obtained as a consequence of the search of his person incident to the arrest. *Id.* at 6-7.

{¶ 19} We concur. According to the "so-called 'automatic companion rule,' " where a police officer arrests a person who is in the company of one or more companions, the officer may conduct a pat-down search of the companions to verify that they are unarmed. *In re D.S.*, 2013-Ohio-5740, 5 N.E.3d 1063, at ¶ 2. The officers in the instant

case had probable cause to arrest Leet's companion, Steinmetz, meaning that they were entitled to conduct a pat-down search of Leet's person as part of their seizure of Steinmetz and corresponding investigation of the car theft. As the trial court noted, the officers' encounter with Steinmetz and Leet occurred in a high crime area—specifically, in front of a residence known to be a locus of illicit drug activity—and the officers initially saw Steinmetz and Leet walking from the residence toward a stolen car. Regardless of whether a *Terry* stop would have been justified by the officers' suspicion that Leet might have purchased contraband before he emerged from the residence, the fact that Leet was Steinmetz's companion permitted the officers to stop Leet and frisk him for weapons. *See id.* at ¶ 12-17.

{¶ 20} Moreover, the officers did not effectively place Steinmetz and Leet under arrest simply by having their service weapons drawn when they ordered the two men to lie on the ground. An approach of that kind "is highly intrusive and under certain circumstances will be tantamount to an arrest, but the mere use of weapons will not necessarily convert a [permissible *Terry*] stop into an [impermissible] arrest." *State v. Taylor*, 8th Dist. Cuyahoga No. 92382, 2009-Ohio-5822, ¶ 16, citing *United States v. Hardnett*, 804 F.2d 353, 357 (6th Cir.1986); *United States v. White*, 648 F.2d 29, 34 (D.C. Cir.1981). Generally, police officers are "permitted to effectuate a *Terry* stop with [their] guns drawn [where] the circumstances surrounding the stop are such that their safety can reasonably be called into question." *Taylor* at ¶ 16. We find that the officers here were reasonably concerned for their safety, inasmuch as they were arresting a suspected car thief in a high crime area.

{¶ 21} Although Leet certainly would have been entitled to walk away from a purely

consensual encounter, the officers in this case were acting within the limits of their authority by ordering Leet to stop. Their subsequent pursuit, arrest and search of Leet's person were therefore permissible, and we hold that the trial court did not err by overruling Leet's motion to suppress the evidence obtained as a result of the search. Leet's first assignment of error is overruled.

{¶ 22} We review Leet's second and third assignments of error together, because they are interrelated. For his second assignment of error, Leet contends that:

IN CA 28341/2018 CR 01933/1, INSUFFICIENT EVIDENCE WAS PRESENTED TO SUPPORT A CONVICTION FOR AGGRAVATED POSSESSION OF DRUGS.

And for his third assignment of error, Leet contends that:

IN CA 28341/2018 CR 01933/1, JOSHUA LEET'S CONVICTION FOR AGGRAVATED POSSESSION OF DRUGS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 23} Leet argues that the State did not introduce sufficient evidence to prove him guilty of aggravated possession of methamphetamine, and in the alternative, he argues that the trial court disregarded the weight of the evidence in finding him guilty. At the start of the bench trial in Case No. 2018-CR-1933/1, Leet's counsel moved for acquittal under Crim.R. 29 before opening statements; the court overruled the motion, which Leet's counsel did not renew at the close of evidence.

{¶ 24} Sufficiency of the evidence "is the legal standard applied to determine whether * * * the evidence [in a given case] is [adequate] as a matter of law to support the * * * verdict." *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), citing

*State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On review of a challenge to a conviction based on the sufficiency of the evidence, the " 'relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. An appellate court reviews a trial court's ruling on a motion under Crim.R. 29 by "the same standard * * * used to review a [challenge to a conviction] based on the sufficiency of the evidence." *State v. Bailey*, 2d Dist. Montgomery No. 27177, 2017-Ohio-2679, ¶ 17, citing *State v. Page*, 2d Dist. Montgomery No. 26670, 2017-Ohio-568, ¶ 7.

{¶ 25} By contrast, in a challenge based on the weight of the evidence, an appellate court considers not only the quantity of the evidence, but the quality of the evidence, as well. *See State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12; *State v. Thigpen*, 2016-Ohio-1374, 62 N.E.3d 1019, ¶ 6 (8th Dist.). Accordingly, the appellate court must review the record; weigh the evidence and all reasonable inferences; consider the credibility of witnesses; and determine whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created a manifest miscarriage of justice warranting a new trial. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *see also State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8. A trial court's "judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Hill* at ¶ 8, quoting *Martin* at 175. A determination that a conviction is supported by the manifest weight of

the evidence is also dispositive of the issue of the sufficiency of the evidence, because "a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citation omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11; *State v. Miller*, 2d Dist. Montgomery No. 25504, 2013-Ohio-5621, ¶ 48, citing *McCrary* at ¶ 11.

{¶ 26} In his brief, Leet claims that the State did not introduce sufficient evidence to prove that he was in possession of "the 17.19 grams of methamphetamine found hidden in [his] bedroom," and concomitantly, that the trial court found him guilty of aggravated possession contrary to the weight of the evidence. (Emphasis added.) Appellant's Brief 6. To prove his guilt, the State had to introduce evidence showing that Leet "knowingly obtain[ed], possess[ed], or use[d]" a "compound, mixture, preparation, or substance included in [S]chedule I or II," which in this case, was methamphetamine. *See* R.C. 2925.11(C). Leet's challenge to the evidence relates entirely to the element of possession.

{¶ 27} Leet does not contest that officers found 2.44 grams of methamphetamine on his person, or that the bag containing 17.19 grams of methamphetamine was found in his bedroom at a house on Wyoming Street—on a shelf over his bed, under a hat. Trial Transcript 72:4-72:10; Appellant's Brief 5-8. Instead, he emphasizes that neither his fingerprints nor DNA were found on the bag containing the methamphetamine found in his bedroom, and that "three other adults" were living in the house at the time. Appellant's Brief 6-8.

{¶ 28} The trial court heard evidence establishing that Leet was arrested with 2.44 grams of methamphetamine on his person, which strongly suggested that he was in

possession of the bag containing 17.19 grams of methamphetamine found by police officers in his bedroom; in that same bedroom, the officers also found a letter from an attorney addressed to Leet.   Trial Transcript 114:25-115:24.   During the bench trial, the State offered the testimony of a witness who frequently visited the Wyoming Street address while Leet and three others were living there.   *Id.* at 18:17-23:15.   The witness testified that unless Leet and his girlfriend were present, she was not allowed to enter Leet's bedroom.   *Id.*

{¶ 29} Although the evidence that Leet had possession of the bag containing 17.19 grams of methamphetamine was circumstantial, the evidence was no less persuasive as a result.   Leet was arrested with methamphetamine on his person, and shortly after his arrest, officers discovered more methamphetamine in his bedroom.   On these facts, the trial court did not disregard the weight of the evidence by finding that Leet was in constructive possession.   *See, e.g.*, *State v. Mabry*, 2d Dist. Montgomery No. 21569, 2007-Ohio-1895, ¶ 18.   As a result, we hold that the trial court did not find Leet guilty contrary to the weight of the evidence.   Leet's second and third assignments of error are overruled.

### III. Conclusion

{¶ 30} The seizure and search of Leet's person by officers with the Dayton Police Department on June 12, 2018, was constitutionally permissible, and we hold that the trial court did not err by overruling Leet's motion to suppress the evidence obtained as a consequence of the search in Case No. 2018-CR-2306/2.   Furthermore, we hold that the State presented sufficient evidence to prove Leet's guilt in Case No. 2018-CR-1933/1, and that the trial court did not disregard the weight of that evidence by finding Leet guilty

of aggravated possession of methamphetamine. Therefore, the judgments of the trial court are affirmed.

. . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
Robert Alan Brenner
Hon. Michael W. Krumholtz